Case 3:21-cv-00191   Document 19   Filed on 01/11/23 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
January 11, 2023
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

### GALVESTON DIVISION

No. 3:21-cv-191

ALFY LEVINE MAYES, *PLAINTIFF*,

v.

GALVESTON COUNTY SHERIFF'S OFFICE, *ET AL.*, *DEFENDANTS*.

### MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Galveston County has moved for summary judgment on the plaintiff's race- and disability-discrimination claims. Dkt. 8. The court grants the motion.

## I. BACKGROUND

Alfy Mayes has worked as a jailer at the Galveston County Sheriff's Office ("GCSO") since 2009. Dkts. 8 at 6; 1 at 4. Mayes, a black male, states in his complaint that he has endured discrimination and retaliation by GCSO since 2013, after the election of Henry Trochesset to the office of Galveston County Sheriff. Dkts. 12-1 at 2; 1 at 4. In the years that followed, Mayes alleges numerous incidents of unpleasant and unprofessional behavior

directed towards him. Dkt. 12-1 at 2–9. In May 2017, Mayes received an "employee conference report" (ECR), which appears to be GCSO's equivalent to a "write-up." Dkts. 12-1 at 10; 8 at 10. It seems this is not the first ECR Mayes has received during his time at GCSO, but it is the first in a series of ECRs the parties have brought up in this litigation.[1] Mayes either disputes the bases of these ECRs or argues he has been disciplined for behavior that GCSO tolerates from other jailers. The 2017 ECR accuses Mayes of allowing inmates to eat expired donuts out of a trash can. Dkts. 12-1 at 10; 8-4. Mayes received another ECR in May 2018 for allowing inmates to bypass a vending machine's locking mechanism to access soft drinks, and another in February 2019 for allowing inmates to eat off fruit trays not intended for their consumption. Dkts. 12-1 at 11; 8-5; 8-6. He insists that granting inmates minor food and beverage liberties is "a common thing" at the jail, and that he was unfairly written up. Dkt. 12-1 at 11. Mayes also says that a white deputy participated in bypassing the lock on the soda-vending machine but did not receive an ECR. *Id.*

Mayes filed harassment complaints against his supervisors on March 15, 2019, and July 10, 2019. Dkts. 1 at 4; 12-1 at 9; 12-2 at 12–13. Meanwhile,

---

[1] In his complaint, Mayes mentions ECRs "given under the previous administration." Dkt. 1 at 4. Presumably, this means under Sheriff Henry Trochesset's predecessor.

the pace of ECRs against Mayes accelerated. Supervisors accused Mayes of failing to conduct his inmate rounds in a timely fashion, repeated tardiness, failing to lock and secure cell doors, allowing inmates to use hair clippers, allowing inmates to spar with each other, and failing to properly secure inmates. Dkts. 12-1 at 12–14; 8-7; 8-8; 8-9; 8-10; 8-11; 8-12. Again, Mayes denies or disputes the bases of these write-ups, blames inadequate training, or argues that policies are selectively enforced against him. Dkt. 12-1 at 12–14. At some point during this period, the sheriff relieved Mayes from his participation on the GCSO Honor Guard and as bailiff of the Galveston County Veterans Treatment Court.[2] Dkt. 1 at 4.

Frustrated with the removal of these responsibilities, the avalanche of ECRs,[3] and "the many years of harassment, hostilities, [and] discrimination" he had endured, Mayes filed another harassment complaint against his supervisors on June 20, 2020, and met directly with Sheriff Henry Trochesset four days later. Dkts. 1 at 4; 12-1 at 9; 12-2 at 14 (Ex. 11). Sheriff

---

[2] However, Mayes also presents evidence indicating that it was Galveston County Judge Mark Henry who removed him from his position as bailiff of the Veterans Court. Dkt. 12-2 at 59. For summary-judgment purposes, the court will assume the sheriff instigated the removal.

[3] Mayes suggests that he "received more write-ups in one year from [his] current supervisors verse [sic] the previous 12 years of [his] employment." Dkt. 12-1 at 9.

Trochesset agreed to delete one of the ECRs but "did not review the others." Dkt. 1 at 4. After meeting with the sheriff, "the harassment and disparities . . . continued." *Id.* at 5. Mayes received an ECR the next month for failing to show "respect, courtesy, and professionalism" towards co-workers and expressing his unhappiness "in an agitated manner" when assigned to staff the COVID-19 quarantine unit. Dkts. 8-2; 1 at 5.

Mayes received additional ECRs throughout the fall and winter of 2020-21 related to socializing with inmates, repeated tardiness, failing to file necessary reports, distributing food to inmates unevenly, allowing inmates into unauthorized areas of the jail, making untimely rounds, and failing to participate in a fire drill. Dkts. 8-13; 8-14; 8-15; 8-16; 8-17; 8-18; 8-19; 12-1 at 14–16. Mayes generally disputes the bases for these ECRs as well. Dkt. 12-1 at 14–16.  In November 2020, GCSO delayed certain promotional pay due to Mayes, the same month that "a complaint from the community was made against [him] although the incident had already been discussed and cleared by [his] supervisor." Dkt. 1 at 5.

In January 2021, while en route to work after his daughter's medical appointment had taken longer than expected, a GCSO sergeant phoned Mayes and made a "disrespectful, derogatory, and unprofessional statement." *Id.* Angry at the statement, Mayes admits he "was ready to fight"

during a subsequent confrontation and was sent home and charged two sick days until a mental-health deputy cleared him to return to work. Dkts. 1 at 5; 8-3.. When Mayes returned, he says his supervisors again assigned him to staff a quarantine unit containing COVID-19 inmates. Dkt. 1 at 5.

On March 17, 2021, Mayes filed a Charge of Discrimination with the Texas Workforce Commission and the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 4. On April 15, 2021, Mayes received another ECR for mismanagement of an inmate under suicide watch. Dkts. 12-1 at 16; 8-21. On April 22, 2021, the EEOC issued Mayes notice of his right to sue. Dkt. 1 at 1, 7. On July 22, 2001, Mayes filed this action against Galveston County and the GCSO,[4] claiming retaliation and employment discrimination on the basis of race and disability in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA). *Id.* at 6.[5]

---

[4] The court dismisses the claims against the GCSO *sua sponte*, because a county sheriff's office under Texas law generally lacks the jural capacity to be sued and Mayes has not alleged or demonstrated that the GCSO enjoys a separate legal existence such that it could be subject to a lawsuit. *Bagley v. Montgomery Cnty.*, 516 F. Supp. 3d 688, 690 (S.D. Tex. 2021); *Crawford v. Collin Cnty. Det. Facility*, No. 4:20-CV-668-RAS-CAN, 2022 WL 4459855, at *3 (E.D. Tex. Aug. 18, 2022) ("the Court notes had the Sheriff's Office been named . . . [it] would be subject to *sua sponte* dismissal because it is also a nonjural entity.").

[5] Mayes presents evidence of alleged discriminatory and retaliatory incidents that occurred after he filed this case. Dkt. 12-1 at 16–18; Dkt. 12-2 at 20–52. Some of these appear to have been included in a second EEOC charge filed by Mayes in October 2022. Dkt. 12-2 at 54–55. But as he has not obtained leave to supplement his complaint to add these new, post-suit facts, they are not properly

Galveston County has moved for summary judgment on Mayes's race- and disability-discrimination claims. *See generally* Dkt. 8. Though Galveston County requests the dismissal of Mayes's entire complaint in its motion for summary judgment, the motion fails to address Mayes's retaliation claim. *Id.* at 24. Mayes has responded to the motion, Dkt. 12, and has also requested a jury trial and sought leave to amend his complaint, Dkt. 13. On December 1, 2022, Mayes sought leave to file an additional brief in support of his opposition to the motion for summary judgment. Dkt. 16. On December 22, 2022, Galveston County filed its response in opposition to that motion. Dkt. 17.

## II.  LEGAL STANDARDS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). The movant bears the burden of presenting the basis

---

before the court. *See Frey v. Natalie Buckingham*, No. 6:12-cv-579, 2013 WL 821963, at *5 (E.D. Tex. Jan. 25, 2013); *El-Khali v. Usen*, No. 21-1140, 2021 WL 4621828, at *4 (6th Cir. Oct. 7, 2021) (holding that the plaintiff's "failure to file a supplemental pleading leads us to conclude that those events that occurred after he filed the [amended complaint] are not properly part of this action"). Mayes has filed a motion to supplement his summary-judgment response with new evidence, but the court will deny that motion. *See* III.C, *infra*.

for the motion and the elements of the causes of action on which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence," then the fact is undisputed. *Broad. Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). "Such undisputed facts may form the basis for summary judgment." *Id.*

### III. ANALYSIS

#### A. Disability-Discrimination Claims

Mayes purports to assert his disability-discrimination claim under

both Title VII and the ADA. Dkt. 1 at 1, 4, 6. But "a disability[-]discrimination claim does not fall within the purview of Title VII's protected classes." *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 443 (S.D. Tex. 2010); 42 U.S.C. § 2000e–2(a)(1). And to prevail on an ADA claim, a claimant must first show that he has a disability. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 695 (5th Cir. 2014). But Mayes never discloses the nature of his disability or alleges that he is, in fact, disabled. Instead, the only disability discussed is his daughter's, and how supervisors may not have fully accommodated his caregiver obligations. Dkt. 1 at 5. Without a demonstration that he himself is disabled, no reasonable factfinder could find in Mayes's favor on his ADA claim. Accordingly, Galveston County is entitled to summary judgment on Mayes's disability claim.

### B. Racial-Discrimination Claims

Galveston County argues Mayes has failed to establish a prima facie case on his racial-discrimination claim. Dkt. 8 at 12–13. "A Title VII plaintiff may make out a prima-facie case of discrimination using either direct or circumstantial evidence." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015), *as revised* (Feb. 3, 2015) (citing *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994)). The court does not find that Mayes has produced any direct evidence of

discrimination. To make a prima-facie case using circumstantial evidence, Mayes must produce evidence that he (1) is a member of a protected class, (2) was qualified for the position that he held, (3) was subject to an adverse employment action, and (4) was replaced by someone outside of his protected class or treated less favorably than other similarity-situated employees who were not in his protected class. *Harville v. City of Houston*, 945 F.3d 870, 874–75 (5th Cir. 2019). "The prima facie case, once established, creates a presumption of discrimination and the burden then shifts to the [defendant] to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 875. "If the [defendant] is able to articulate a legitimate, non-discriminatory reason for the termination, the burden shifts back to [the plaintiff] to 'demonstrate that the employer's proffered reason is a pretext for discrimination.'" *Id.* (citation omitted).

Galveston County's motion for summary judgment focuses exclusively on the fourth element. Galveston County argues that Mayes is still employed by the GCSO, has not been replaced, and that "there is no[]evidence that Mayes is treated less favorably than other employees." Dkt. 8 at 12.

The court agrees that Mayes's argument falters on the fourth prima-facie-case element. As an initial matter, the court notes that in his response to the motion for summary judgment, Mayes describes more acts of alleged

discrimination that occurred in 2013–2015. Dkt. 12-1 at 4–9. But because these new factual allegations are raised for the first time in response to a motion for summary judgment, they are not properly before the court. *See, e.g.*, *Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) (per curiam). Though the complaint does allege that Mayes was first discriminated against in 2013, it includes no mention of any of the factual allegations Mayes seeks to now introduce. Since Mayes is a pro se litigant, the court will construe the response to summary judgment as a motion to amend the complaint. *See Riley v. School Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010) (holding that where a pro se litigant introduces new claims in response to a motion for summary judgment, a district court should construe the response as a motion to amend the complaint). For reasons discussed below, in Part D, the court denies that motion to amend.

Returning to the arguments concerning Mayes's prima facie case, he alleges that he was "replaced by someone outside [his] protected group." Dkt. 12-1 at 10. Though this statement is conclusory and unaccompanied by any citation to the record, the court presumes Mayes is referring to his removal as bailiff of the Galveston County Veterans Treatment Court and from the GCSO Honor Guard. Dkt. 12-2 at 58–59. As the court has identified no summary-judgment evidence showing who, if anyone, "replaced" Mayes on

the Honor Guard, that act of "replacement" will not satisfy the fourth prong of a prima facie discrimination case. Galveston County's summary-judgment evidence, however, indicates that Mayes was replaced at the Veterans Court by a Hispanic male. Dkt. 8-1 at 3. But Mayes makes no reference to this evidence. "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016) (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)). This rule applies even to pro se plaintiffs like Mayes. *Id.*

But even if this evidence were properly before the court, Mayes's "replacement" as bailiff still does not trigger Title VII. "Since plaintiff has not alleged that [he] was discharged . . . plaintiff's allegation that [he] was replaced . . . has no bearing on [his] prima facie case." *Smith v. Potter*, 629 F. Supp. 2d 644, 654 (S.D. Miss. 2009) (holding that where a white employee received a coveted work schedule that a minority employee had initially been offered, and the minority employee was not discharged but instead told to return to her originally scheduled shift, the white employee was not a Title VII replacement). The court cannot characterize the loss of the bailiff function—a duty that is incidental to Mayes's jailer position, substitutes for

none of Mayes's duties as a jailer, affords no compensation or benefits, and concerns a court that meets only sparingly—as a "discharge." A reasonable factfinder could not find that relieving Mayes of this incidental job function and assigning it another person amounts to a "replacement" under Title VII.

Moreover, Mayes's loss of his bailiff responsibilities cannot constitute an adverse employment action. *Thompson v. City of Waco*, 764 F.3d 500, 504–05 (5th Cir. 2014) (collecting cases for the proposition that the mere loss or alteration of some job duties without something more is not an adverse employment action). So even if Mayes could show that he was "replaced" as bailiff, as it is not an adverse employment action, it will not support a prima facie case. *See Outley*, 840 F.3d at 217 n.14 (5th Cir. 2016) ("It is possible that [plaintiff] could satisfy prong four with regard to her transfer, because she alleges that she was replaced [by a white male] . . . But even if she had provided evidence in support, it would be immaterial because . . . the transfer was not an adverse employment action.").

In a further attempt to establish his prima facie case, Mayes also alleges that he "was treated less favorably than other similarly situated employees outside the protected group." Dkt. 12-1 at 10. But a Title VII plaintiff alleging disparate treatment must identify comparators and produce evidence that they were similarly situated employees. *Owens v. Circassia Pharms., Inc.*,

33 F.4th 814, 827 (5th Cir. 2022) (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001)). Moreover, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Perez v. Tex. Dep't of Crim. Just.*, 395 F.3d 206, 213 (5th Cir. 2004)). Evaluating the evidence in the light most favorable to Mayes, the court cannot say that he has identified any similarly situated comparators. Of the many other deputies Mayes passingly mentions, the record simply does not establish, or even suggest, that they are truly similarly situated employees outside of Mayes's protected group who were treated more favorably. *See Owens*, 33 F.4th at 827 ("We cannot compare [the plaintiff] to other [employees] when she fails to . . . explain why they are similarly situated.").

Moreover, the evidence Mayes has assembled tells the court very little, if anything, about the conduct of these other employees, their job performance, or to what extent GCSO has taken disciplinary actions against them. A reasonable factfinder could not determine if Mayes's conduct was "nearly identical" to that of these hypothetical comparators much less whether their conduct resulted in dissimilar adverse employment decisions.

And that means a reasonable factfinder could not determine if the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer" as opposed to impermissible racial bias. *See Lee*, 574 F.3d at 260. As a result, Mayes has failed to raise a genuine issue of material fact as to his prima facie case of racial discrimination, and Galveston County is entitled to summary judgment. Because Mayes failed to meet his summary-judgment burden on the prima facie case, the court need not analyze the remaining analytical steps in the Title VII racial-discrimination framework.

### C. Additional Briefing

Mayes seeks leave to file an additional brief in opposition to Galveston County's motion, seeking to raise new evidence and new factual allegations. Dkt. 16. Primarily, it appears Mayes seeks to allege additional incidents of discrimination and retaliation which have occurred since the filing of this suit. Dkt. 16 at 1. Specifically, Mayes refers to a complaint filed against him on October 3, 2022; a Contemplation of Disciplinary Action (CODA) served on November 18, 2022; an Administrative Action Report (AAR) recommending his termination issued on November 29, 2022; and certain statements of facts given by jail employees in January-February 2022 regarding a January 11, 2022, use-of-force incident. *See generally* Dkt. 16-1.

He also attempts to introduce a new negligence claim and makes an unavailing argument about comparators. Dkt. 16 at 3, 6.

Galveston County's response treats Mayes's motion as a request under Fed. R. Civ. P. 16(b)(4) to supplement the summary-judgment record after the relevant docket-control-order deadlines have passed. Dkt. 17. Moreover, any new facts occurring after the filing of the lawsuit, used as evidence to support claims brought in the complaint, are not properly before the court absent a motion to supplement under Fed. R. Civ. P. 15(d). *See El-Khali*, 2021 WL 4621828 at *4; 4 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1051 n.20 (4th ed. April 2021 Update) ("The filing of an action fixes the controversy, and after-occurring events cannot be litigated except by the filing of a supplemental pleading with the court's consent."). But Mayes's motion, Dkt. 16, is not a Rule 15(d) motion to supplement.

In any event, as all relevant docket-control-order deadlines have long since expired, Mayes's motion must be evaluated under the "good cause" rubric of Fed. R. Civ. P. 16(b)(4). *See Al-Khawaldeh v. Tackett*, No. 1:20-CV-01079-RP, 2021 WL 2322930, at * 1 (W.D. Tex. June 7, 2021). The factors relevant to a court's "good cause" inquiry include: (1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the evidence; (3) potential prejudice in allowing the evidence; and (4) the

availability of a continuance to cure such prejudice. *Batiste v. Lewis*, 976 F.3d 493, 500 (5th Cir. 2020).

Mayes addresses none of these factors in his motion. Some of the allegations Mayes seeks to raise—those concerning the January 11, 2022, use-of-force incident—occurred almost a year ago. Other incidents occurred as recently as late November 2022. Mayes does not explain how bringing in these new allegations at such a late stage would not prejudice Galveston County in defending its case. He does not explain why these new facts are important for his already-existing case. Mayes's request for leave to file another brief in support of his opposition to the motion for summary judgment is denied.

The court will construe Mayes's apparent request to add a negligence claim as a motion to amend under Fed. R. Civ. P. 15(a). *Riley v. Sch. Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010) (per curiam) (holding that "when a claim is raised for the first time in response to a summary judgment motion, the district court should construe that claim as a motion to amend the complaint"). Since this request to amend again comes well after the expiration of the relevant docket-control-order dates, it is likewise evaluated for good cause under Rule 16. Mayes makes no case for good cause.

Further, the prejudice to Galveston County of allowing a new claim at this late stage would be substantial.

While the court denies Mayes's motion to file an additional brief in support of his opposition to the motion for summary judgment, the court will grant him leave to file a proper motion under Fed. R. Civ. P. 15(d) to supplement his complaint with new, sworn post-complaint factual allegations to support his retaliation claim. The motion should explain why good cause exists to allow the amendment under Fed. R. Civ. P. 16(b)(4) and should include as an attachment a copy of the supplemental complaint that Mayes seeks to file. Mayes should file this motion and the accompanying proposed complaint no later than fourteen days from the date of this order.

### D. Amendment

Though the court will allow Mayes to supplement his retaliation claim, it denies his motion to add claims under 42 U.S.C. § 1981 and § 1983. Dkt. 13. The docket-control order's deadline for amending pleadings expired almost a year ago—on February 4, 2022. Dkt. 7. Though Mayes is correct that nothing prevents him from maintaining multiple claims under multiple theories, including both Title VII and § 1981 and § 1983 claims, this is insufficient to justify amendment at this late stage. In the context of untimely motions to amend pleadings, a court may consider "(1) the explanation for

the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *S&W Ents., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003) (quoting *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)). Mayes's explanation for his failure to timely amend is unpersuasive—the same set of facts that support his Title VII claims and that he knew of when he filed his original complaint could have also given rise to the § 1981 and § 1983 claims. And Mayes does not demonstrate the importance of this amendment merely by observing that there is no rule against maintaining multiple claims under multiple theories. Discovery has long since closed, and the prejudice to Galveston County of adding these new claims at this late date would be substantial. *See Allen v. Houston Indep. Sch. Dist.*, 689 F. App'x 238, 242 (5th Cir. 2017) (per curiam) (holding under similar circumstances that a district court did not abuse its discretion in denying leave to amend to add § 1981 and § 1983 claims). The finding of prejudice is bolstered by the fact that Galveston County has already moved for summary judgment and the litigation has progressed to an advanced stage. *See Ware v. U.S. Bank Nat'l Ass'n*, 131 F. Supp. 3d 573, 579 (N.D. Miss. 2015). And courts are justifiably wary when a party seeks to amend after a motion for summary

judgment has already been filed. *See Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 541 (E.D. Tex. 2000). "A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its complaint." *Id.* (quoting *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990)). Balancing the relevant factors, the court does not find good cause to allow amendment.

### E. Jury Request

Mayes also requests a jury trial in his motion to amend. Dkt. 13 at 2. Though the request is untimely under Fed. R. Civ. P. 38(b), the court will decline to rule on this request right now and instead carry it with the case.

\*   \*   \*

Galveston County's motion for summary judgment is **GRANTED**. Dkt. 8. Mayes's retaliation claim remains the only live component of his case. Mayes has fourteen days from the date of this order to file a motion to supplement his pleadings under Fed. R. Civ. P. 15(d). The court, finding good cause to do so, resets the deadline for the filing of dispositive motions in this case to twenty-one days from the date a supplemental pleading is filed. Except for Mayes's request for a jury trial, Dkts. 13 and 16 are **DENIED**. Docket call is rescheduled for **Friday, May 26, 2023, at 9:30 a.m.** The deadline to exchange pre-trial materials is rescheduled for **Friday, May 19,**

**2023.**

Signed on Galveston Island this 11th day of January, 2023.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE